[No. 27566. Department Two. August 3, 1939.]

CREECH BROS. CONTRACTING COMPANY, *Appellant,* v. PACIFIC COUNTY, *Respondent.*[1]

*Fred M. Bond,* for appellant.

*J. Burke Welsh,* for respondent.

GERAGHTY, J.—The plaintiff brought this action to recover from the defendant, Pacific county, a balance alleged to be due under the terms of a contract entered

[1]Reported in 93 P. (2d) 292.

into by the parties for the erection of a bridge and approaches. The cause was tried to the court without a jury. Findings of fact were made, in which the court found that there was due the plaintiff a balance of $903.06, for which sum a judgment was entered in its favor. The plaintiff, not being satisfied with the amount of the award, appealed. The contract, made by the parties August 4, 1937, was on a standard printed form, which provided that the contractor was to "do all work and furnish all materials" required to complete a bridge across Fall river, in Pacific county. But this general provision was qualified by certain special provisions made a part of the contract. Under these, the county was to furnish all the materials necessary for the project. The labor and necessary equipment for performing the work were to be supplied by the contractor. The contract was let on the basis of unit prices. The contractor's proposal, attached to and made a part of the contract, specified the several units, quantities, and bid prices as follows:

| "Item of Work | Approximate Quantity | Unit | Unit Bid Price | Amount |
|---|---|---|---|---|
| Removing existing bridge and trestle approaches and cleaning site | All | ....... | Lump Sum | 340.00 |
| Structure Excavation | 200 | Cu. Yds. | $1.25 | 250.00 |
| Trestle Lumber in place | 44.621 | M. B. M. | 16.00 | 713.94 |
| Truss Lumber in place | 10.587 | M. B. M. | 40.00 | 423.48 |
| Total Amount of Bid | | | | $1727.42" |

After completion and acceptance of the bridge, a controversy arose in respect to the balance due the contractor. It had been paid one estimate of $850.54. The complaint alleged that there was due a balance of $1,114.86, in which was included an item of $40.11 for extras. In its answer, the county admitted the full per-

formance of the contract and alleged that there was due the contractor a balance of $850.11.

Apart from a dispute as to some small items contained in the contractor's bill for extras, the difference between the parties arose out of conflicting views as to the classification of the lumber used in the project. It is to be seen from the proposal that the contractor was to be paid at the rate of $16 a thousand, board measure, for trestle lumber in place, and $40 a thousand for truss lumber in place. It will also be noted that the estimated quantity of trestle lumber was 44,621 feet, and truss lumber 10,587 feet, or a total of 55,208 feet.

That the total amount of timber used in the structure was 57,678 feet, is not disputed. Of this amount, some 8,500 feet was used for the flooring and stringers of the bridge proper, that is, the span supported by trusses across the stream between the piers. The appellant contends that the lumber used for stringers and flooring should be classified as truss lumber and its installation paid for at the rate of $40 a thousand, while the respondent urges that it should be classified as trestle lumber, payable at the rate of $16 a thousand.

The special provisions of the contract provided:

"TRESTLE LUMBER:

"The unit contract price per M.B.M. for Trestle Lumber shall be for the handling and placing only of all lumber, nails, hardware and other parts necessary to the erection of the trestle approaches and frame bent piers for the Howe Truss Span as shown by the plans, which price shall include all labor, supervision, tools, equipment and all other expenses incidental to the erection of the same.

"TRUSS LUMBER:

"The unit contract price per M.B.M. for Truss Lumber shall be for the handling, framing and placing only of all lumber, bolts, rods, washers, plates, angle blocks, nails and all other parts necessary to the erection of the Howe Truss Span as indicated by the plans, which price

shall include all labor, supervision, tools, equipment and all other expenses incidental to the erection of the same."

The appellant, contending that these special provisions were plain and unambiguous and called for no construction, objected, at the trial below, to the reception of evidence in explanation of their meaning.

It must be conceded that, standing alone, the provisions would seem to require no construction, but they are only a part of the contract. The plans and proposal which appellant signed are also part of the contract.

While the appellant alleged in its complaint that the trestle lumber in place amounted to 36,149 feet and the truss lumber 21,529 feet, in its proposal the approximate quantities were stated at 44,621 feet of trestle and 10,587 feet of truss lumber. Since the quantities could be estimated with reasonable certainty from the plans, the amounts stated in the proposal strongly support the respondent's contention that the flooring and stringers were not considered as "truss lumber in place."

The trial court, being of the opinion that the contract as a whole was ambiguous and uncertain as to the matter at issue and required construction, permitted respondent to introduce evidence in explanation of its terms.

Mr. J. D. Henry, a civil engineer of long experience and admitted qualification, testified that he had checked the lumber in the trestle, and also the amount of lumber in the floor, as a separate item. He "made a couple of hundred feet more for truss lumber than the plans show . . ." The decking and stringers on the truss amounted to about 8,500 feet.

"The truss lumber exclusive of guard rail and the wheel guard rail amounted to 9,828 feet, the guard rail 550 and the railing 550 or a total of 10,493 feet."

He testified that the decking, including stringers, was a very low labor product which could be handled fast; that any one bidding on the contract and examining the plans would know that the decking and stringers on the span were not included in the engineer's estimate of truss lumber; that his own figures, based on the plans, indicated that the lumber in the decking and stringers were not included as truss lumber.

Asked, as an expert, whether anyone could intelligently bid on the contract without an examination of the proposal and plans, he answered, "They could not bid on the contract at all, they would not be permitted unless they used the combined data"; that the contractor's proposal is always attached to the plan, and he must submit the papers altogether. In his opinion, under the contract as a whole, the decking and stringers were to be considered as trestle lumber.

The court found that there had been used, in the whole job, 57,678 feet; that, of this, 44,649 feet should be considered as trestle lumber, and 13,029 feet as truss lumber. The appellant's bill for extras was reduced from $40.11 to $32.31. Summarizing the whole contract, including the contested items, the court found that the appellant had earned $1,753.60; that, deducting from this sum the $850.54 already paid, there remained a balance of $903.06 due the appellant, for which judgment was to be awarded, this being $211.80 less than the amount claimed by the appellant.

The record sustains the court's finding, and the judgment should be affirmed.

BLAKE, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.